# IN THE COURT OF APPEALS OF IOWA

No. 16-0725
Filed June 29, 2016

**IN THE INTEREST OF S.S.**
**Minor child,**

**K.S., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan C. Cox, District Associate Judge.

A mother appeals the juvenile court's order terminating her parental rights to her child. **AFFIRMED.**

Jane M. White of Jane M. White Law Office, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, for minor child.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

The mother appeals from the order terminating her parental rights to her child, S.S., pursuant to Iowa Code section 232.116(1)(h) (2015) (authorizing the termination of parental rights, as relevant here, where "the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time"). On appeal, the mother contends the State failed to prove the ground for termination by clear and convincing evidence, termination was not in S.S.'s best interests, and the mother should have been granted a six-month extension to work towards reunification.

The standard of review and controlling framework are well-established and need not be repeated herein. *See In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016) (stating review is de novo and setting forth the applicable "three-step analysis").

S.S. was born in July 2013 and was in the mother's care until June 2015.[1] S.S. was removed after the family came to the attention of the Iowa Department of Human Services (DHS) because the mother had threatened to kill herself and was exhibiting signs of mental illness. Additionally, the mother was homeless at the time. The mother had been previously diagnosed with bipolar disorder, attention deficit hyperactivity disorder, anxiety, and post-traumatic stress disorder. She reported feeling depressed and paranoid.

S.S. was returned to her mother's care on September 3, 2015, and remained in the mother's care until October 26, 2015. S.S. was removed again

---

[1] The father's parental rights were also terminated. He was not present for the termination hearing, and he does not appeal.

when the mother was asked to leave a local transitional living program. The mother had tampered with a sample for a drug screen, and when she was caught, she admitted she would have tested positive for marijuana.

Around the same time S.S. was removed from her care for the second time, the mother stopped participating in mental health treatment and stopped attending medication management. According to the mother's own admission, she also hit two parked cars with her vehicle while she was intoxicated, wrecking her own car in the process.

Between early December 2015 and early February 2016, the mother failed to participate in any parenting time with S.S. Additionally, she missed a permanency hearing in December. The mother missed three of four scheduled parenting times leading up to the termination hearing on March 30, 2016.

At the hearing, the mother testified she was ready to make better choices so S.S. could be returned to her care. However, the mother admitted she had used marijuana three days prior to the hearing, and she had not reinitiated mental health treatment or substance abuse treatment.[2] The mother continued to maintain she did not need substance abuse treatment because she could "do it on [her] own". She testified she had a job interview scheduled for the end of the week but admitted that she had to turn down a job offer she received a couple weeks prior because she knew she would fail the drug test upon which the employment was conditioned. She also would not be able to accept the

---

[2] In late February, the mother scheduled a therapy and medication management appointment, but she did not attend and she did not reschedule. Additionally, the mother testified she had called the transitional living program to see if she could enter the program again, but they denied her reentry and she did not call or check in with any other programs.

position from the upcoming interview if it was conditioned upon passing a drug test in the near future. The mother was living with two roommates, at least one of whom had previously illegally sold prescription medications.

The mother maintains the State did not prove by clear and convincing evidence that S.S. could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4). According to the mother's own testimony, at the time of the hearing, she was not attending mental health treatment or substance abuse treatment. She had been disengaged with services since October 2015, except for scheduled parenting time, which she participated in intermittently at best. The mother was unemployed and still using an illegal substance regularly. Moreover, the mother did not have stable housing, and one of the friends she was living with had a questionable past with prescription pills. As the juvenile court found, "The mother loves her daughter, but has established a pattern of putting others before S.S. This includes drugs, alcohol, and a boyfriend. The mother has not even started to make the necessary changes for this important little girl or herself." For all of these reasons, there is clear and convincing evidence S.S. could not be returned to the mother's care.

The mother maintains termination is not in S.S.'s best interests because of the bond the mother and S.S. share. Our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes" the mother's inability to provide for the child's developing needs. *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010); *see also* Iowa Code § 232.116(2) (setting forth the

factors to be considered in determining the child's best interests). S.S. has been placed with the same foster family the entire time she has been removed from the mother's care. According to the guardian ad litem, the foster family was "taking excellent care of" S.S. and was "willing and able" to adopt and care for S.S. Termination enables S.S. to achieve permanency, and we believe that is in her best interests. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and her "need for a permanent home")).

Finally, the mother maintains she should have been granted a six-month extension. In order for the juvenile court to grant the mother an additional six months to work towards reunification, the court is required to find "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *See* Iowa Code § 232.104(2)(b). Although the mother did well for a short period of time early in the family's involvement with DHS, she has made no apparent progress since October 2015. She testified she knew what she needed to do and was ready to start doing it, but her actions belie her assertions. Additionally, the mother was not participating in mental health treatment or medication management, in spite of her serious mental health issues. We cannot say additional time would obviate the need for S.S.'s removal.

We affirm the juvenile court's order terminating the mother's parental rights to S.S.

**AFFIRMED.**